Our next case this morning is REGENTS UNIVERSITY of MINN v. AGA MEDICAL Mr. Connealy? May it please the court, good morning your honors, counsel. This appeal involves two University of Minnesota patents that cover a self-expanding, self-centering septal occluder for repairing holes in the heart. The trial on the Merritt Tower was foreclosed by three legal errors that the district court made in two separate summary judgment rulings. I'll address first the 291 error, which is reading in extraneous limitations into the claims of that patent. The district court construed the claim term DISCS as DISCS that before being affixed, joined, or connected, exists separately as individual, physically distinct DISCS. Essentially the district court was saying that the phrase in the patent being joined to means that it must have originally at some point in time not been joined to and this was improper. We are too far past this court's jurisprudence in Phillips to read in a limitation into this patent because there was no lexicography in this case and there was no disclaimer in this case of a device that did not have DISCS that originally had separate individual... It is a structure claim and it seems that this is reading in a process, but it does say first and second DISCS. How do we deal with that? Well, a device, and this device in particular, has a button type design, so whether it's a complete device as shown in figure three, and it sits on each side of the defect. That's the nature of the patent. The first and second DISCS can be seen as features of a unitary device. Absolutely your honor. What about the affixed limitation? I think that claim one of the 291 has the phrase being affixed to. Yeah, which suggests separate things that are affixed together. Well, the patent uses these terms interchangeably. Joined, being joined to, affixed to, attached to, connected to. All of these terms have their ordinary meaning in the claims and affixed should not be given, especially in this context where there's no disclaimer. The most narrow possible meaning of affixed, which it includes definitely, I agree with your honor, that it can include taking two things, a hinge and a door, and affixing them to each other. I understand that, but it doesn't exclude having two members, as Judge Rader said, two DISCS of the same device being affixed. I think the key teaching of the patent here is that all we were trying to show those of ordinary skill was in, I think it's in column three, where we say the adhesion between the two DISCS should be strong enough so that they don't come apart. That's the key. Doesn't that itself suggest that they were separate? No, it doesn't, your honor. It talks about bonding, it talks about ways, bonding certainly is talking about the same homogenous material coming together, and it's not much of a stretch for those working in this field to say, well, if we're going to use the membranes of each DISC and they're going to be part of the same thing, that they can all be the same material. It doesn't have to start out separately. The key thing is that it not come apart during deployment or, God forbid, in the heart while the heart's beating. So, in other words, detached? So that it never comes detached, that's right. But, if it's unitary, how would it be detached? It could break in half. The summary of the invention says that this is a closure device that includes two occluding structures with two features. That's exactly right. So, as I was saying... Why doesn't the tab say that, when they say it's trying to avoid them becoming detached, doesn't that suggest that they were originally not part of a single thing? No, it's not limited in that way at all. And, if I may, if we look at column 6 of the 291, A116, this is not talking about the DISC in particular, but I really think it's illustrative. If you look at column 6, this is talking about the loops of the frame, line 24 to 26, Your Honor. They're formed to function as tension springs, biasing the legs to which they are attached outwardly into the position shown in figures 3 and 4. And, of course, when you go back and look at 3 and 4, 26 is the leg, 28 is the tension spring. It's all part of the exact same wire. Well, that doesn't help that much. What it shows is that, using these words in their ordinary meaning, you can have both things that started out as separate and things that were part of the same structure. And the patentee was not trying to distinguish the invention at any time from a device that didn't have DISCs that started out separate and physically distinct. And, of course, there's no disavowals. AGA is not arguing that. The court didn't find any disavowals below. Contrasting this with a line that I read in the Honeywell decision from this circuit saying that if the specification could talk, it would say, don't use X. And that's a clear way of finding that a patentee has said, I am not claiming, in this case, I am not claiming DISCs that started out separate. Here, we don't have that. The specification does not say, don't start out with something that is not two separate DISCs that were physically distinct. And the district court, in our mind, went off the Phillips track when he started to, as I think maybe it could be common, take the word, well, the word affixed has a meaning to me about paintings on a wall or hinges on a door or blocks of marble. And these unhelpful analogies really are not the way to do claim construction. I mean, even the court at one point, at age 25-71 during the arguments, made the family feud analogy, which is totally inappropriate. What we do when we do claim construction is we look at the ordinary meaning of the words to one of ordinary skill in the claims. We don't go out into a survey of what people think in the abstract a word might mean. And in this context... Is there any embodiment here where the two DISCs start out attached to each other? There's a, well, the two, the figure three shows that. It shows the, oh, where they start out attached? No, where they start out not being separate. Well, again, there are, there's a description of the ways to make the device or certain embodiments of the device that's claimed, but not all are claimed. And certainly I would say no, there's no description of how to make one that started out other than is shown in the patent. They're set to separate DISCs. As two separate DISCs? Yeah. It doesn't exclude it, but the specification doesn't have a device and say this one started out with DISCs that weren't separate. And again, as I was saying, we read the words in their ordinary sense in the claims, in the context of the claims. And we read them from the context of someone of ordinary skill in the art.  Attached, can be synonyms, just like a fix can be a synonym for those words. We know it because AGA describes its own product this way, as having a connecting waste or having a DISC that are linked together by a short connecting waste. They said that to the FDA, they say it to their investors, they say it in their technical documents. So AGA understands the ordinary meaning of these words too. They shouldn't have been, no limitation should have been imported into the 291 patent claims as the court did for DISCs. What does it mean when something is conjoined? Together, forming the same thing. I'm going to talk now about the other legal errors and these relate to the invalidity summary judgment ruling. The district court also committed a legal error by trying to recapture a DISC claimed feature. The hub and spoke umbrella features of the meeting and lock. Are you relying on what happened in the history of what I guess is the 217 patent? Is my memory correct about the number? Actually, it's the original application, the 951 application, but eventually it did lead to the 217 patent. In the history of the 217 patent. But I guess my problem is that the 217 patent and the 281 patent use different terminology. So don't our cases suggest that a disclaimer in an earlier prosecution doesn't carry over where different terminology is used? Well, Your Honor, the way I read the case is it has to be the same subject matter, but not necessarily exactly the same word. So somebody who gives up something on an earlier patent can't decide to file a broader application? That would capture the subject matter that they didn't get in the first patent? That seems kind of odd. Just because it's the same subject matter, somebody can't broaden it to include something which they gave up in the first prosecution? Well, let me try to... All I was trying to point out is that it isn't the exact same language, the exact same words. But in this case, in fact, we do have the exact same words. And here's why. The 281, the term that we're concerned about, has a limitation, you know, self-expanding structure, and then it has two functions associated with it. The district court construed that as means plus function and said here are the supporting structures for that self-expanding structure. One, a frame carried around the periphery, and two, the super-elastic membrane. AGA is not trying to say that it's King and Locke references that it's relying on are the equivalent of the super-elastic membrane, so we don't have to worry about that. What they're saying is King and Locke's radial umbrella is the equivalent to the peripheral frame, which is the other 112-6 structure that the court found. So we do have identity between what was being disclaimed before about King and Locke, the radial umbrella. I'm not following you. What's the similar claim language between the 217 and the 281? In the 217, or the 951 application, the claim language was a frame carried around the periphery, which I'm using as a shorthand peripheral frame, which is shown in Figures 3 and 4, and that was what was at issue before the examiner then. That was the added language? That was the language that the examiner said is found in King and Locke, yes. Let me... If I may, this is at A6230. And there the examiner was saying, I think that King's radial umbrella hubs are the same because it comprises frames carried about the periphery of the disc. And in response, the patentee said, no, and now I'm at A6244. No, King uses a pair of... So the equivalent structure in this supposedly means-plus-function claim is the radial arm, and that was the subject matter that is disclaimed, disavowed in the parent application. Right. And the other thing about that is, there's no doubt that it's disclaimed. This is one of the clearest cases of disclaimer there is, and I'm the patentee. So we said it's disclaimed. AGA said in the lower court, when they were trying to get a certain construction, the university disclaimed King and Locke's radial arms back in that 941 application. Well, nobody's arguing that it wasn't disclaimed in the 217, right? I'm sorry, Your Honor? No one's arguing that it wasn't disclaimed in the 217 prosecution. That's not the question. That's right. That's exactly right. And so, if King and Locke were disclaimed back then, you can't, whether it's for infringement purposes or anticipation purposes, go back later and recapture the disclaimed subject matter, the radial umbrella frame, in order to claim equivalence. That's the circuit's law, and it applies in this case. And that's why the district court erred on its anticipation argument in finding that King and Locke are the equivalent. I want to turn just briefly now to the indefiniteness. Having construed the claim, the phrase, potly holding, and having construed the rest of the patent, the court nonetheless found that the same claim was both anticipated and indefinite, and that just can't be. But moreover, the patent claim is not indefinite. Fortotly holding is another function that's served by the self-expanding structure. The structure of the 281 claim, though maybe not grammatically perfectly correct, as the district court seemed to think the standard was, is readily understandable. The court understood it the first time it construed it. The court understood the scope of the claim when it was applying it for infringement purposes. It understood it when it was applying it for anticipation purposes. And yet later it came back and said, because fortotly holding could modify several things that are antecedent in the claim, it basically threw up its hands. And that's not this court's ruling. Indefiniteness, even though construction is sometimes hard, if a claim is amenable to construction, as this one is, in light of the specifications, it's not indefinite. Thank you. I'll reserve the rest for you. Finally, thank you. You've consumed all but 20 seconds of your time. Let's give you back two minutes for rebuttal. And if you'd give Mr. Vandenberg two extra minutes if he needs to use that. I'd be more than happy to. Okay. Thank you. Mr. Vandenberg? Thank you, Your Honor. May it please the Court. As in all patent cases, the university in this case is bound by what they actually chose to claim as their invention, not what in hindsight they may have wished they had claimed as their invention. Well, they claimed a structure. They didn't claim a process of combining two things. That is certainly true, Your Honor. And this is a structure that is depicted in Figure 3 as a unitary device with two features that are disks on each end. We have pretty strong indications in our law that you don't construe a claim to read out a preferred embodiment, which is depicted right there in Figure 3, right? We're certainly not reading out any embodiments because what's shown in Figure 3 was, in fact, made by taking a first disk and a second disk and sewing them. The patent gives numerous examples of ways you could... But this isn't a process claim of sewing things. It's a structure claim. And we're worrying about this affixed language, but it's notably placed in a state of being. It's being affixed, which makes it a structure describing a single unitary element with two features, right? Let me start with this. The law is clear that we don't read in process limitations into a product claim. But if you choose to claim your product using words that necessarily infer or... How does being affixed require a process? Because affixed is simply something... Being. How do you deal with the being? I understand being, but you've got to start with what? Being affixed. And if you start with the premise, and I believe Judge Dyke was going down this road, that the word affixed is never used to talk about different parts of an integral structure, then just adding the word being, when you say something is being affixed, you're necessarily describing... My two lenses are affixed to each other, aren't they? I don't believe so, Your Honor. I just said they were. I used it in that sense. Do you understand it? I bet even... Excuse me. I bet Judge Wallach understands it. I'm sorry, but I don't see it. Pardon me. But they're affixed. And they're a unitary device. If you want to define them in a way contrary to their ordinary meaning, certainly a patentee can do that as a matter of their own lexicography. But that didn't happen here. When you go to the specification, you understand what they're talking about. They use the word affixed in accordance with its ordinary meaning. They talk about taking two discs and affixing them together. And they go on and they describe how they can be affixed. They can be affixed by sewing, they can be affixed by bonding, they can be affixed by adhesive. But every one of those examples are all consistent with what we know that word means, which is that you've got to start with two separate things and bring them together. So certainly there are cases where there have been process limitations in a product claim, and this court gives them weight. We cite this case in our brief, but not for this proposition. The Southwell Technologies case, the limitation was a sputter-coated dielectric. That's a dielectric that has been deposited by sputtering. So we have a product claim that is, including as part of it, a limitation that refers to how it was made. In that sense, affixed, connected, and joined in this case are no different. Now, the university does point out correctly that in the abstract, two of these words, the connected and joined, are sometimes words that are used to describe just different parts of an integral structure. But again, what we do with patents is not look at the words in the abstract, we look at them in the context that they turn together. But we read it in the context of the whole thing. I just picked out one sentence. The instant closure device includes a first and second disc. Isn't that telling us it's a single device with a first and a second disc as features? But then it goes on in the very remainder of that same sentence to say, which are attached to one another. Yeah, they are attached to each other too. I agree. And it's irrelevant how they got attached, whether they're done with plastic like this or with metal like in the glasses Judge Wallace is wearing. The point is, would you describe take your glasses and if you take the front part of the frames, would you say the left hand of the front side of the frames of your glasses is affixed to the other hand? I certainly wouldn't use those words. Certainly they are. That's exactly what they are. And if I break them, which I do all the time, they aren't affixed anymore. All I can do is disagree with you on that, Your Honor. I think that on those words, and again, when you look at this specification as a whole, they're never described. You just don't put process claims into a structure claim. This is patent law 101. I teach that in my class. We do when a word is included in the claim that infers structure. Can I give you another example from this court's case law? The dents fly case. Now that one was one you didn't actually even have a connection term. But the issue, the claim required a connecting body. In other words, connecting was important. It required a body and a tip. And the accused product was an integral structure of a body with a tip. And the issue before this court was, well, could this claim read on that structure? And after it was a product claim, and after going through the tools of claim interpretation, this court ultimately concluded that no. In the context of this patent, when we say you have to have a patent, that's talking about two separate structures that need to be brought together. It did not read on the integral structure that the patentee had in that case. So again, we don't read in process limitations. But if you choose to claim your invention in a way that viewed in terms of the intrinsic evidence, you see it requires two separate products that somehow we brought together. You want to make this a product by process claim? I don't think you need to go that far. There's rules relating to product by process. Let's take the opposite word. Integral. That's a word that comes up quite often in patent cases. What does the word integral mean? Well, that excludes a product that is made in a particular way. I wouldn't call that a product by process claim. But it still is a word that implicates how the product was made. Does the word conjoined or conjoined have an implication of prior separation? I view that word as just another example of all the other terms we have in this case. And again, when you look at it in the context of this patent, whenever it described a conjoined disc, it described putting two things together.  and Mr. Connealy certainly pointed this out, where they needed this to distinguish over the prior art. But what it was, was a situation where the inventor was stuck in the two-disc paradigm. He was aware of the prior art that connected the two discs together at their center. He got her to connect frames together at their center. He moved the frame to the outside but still had this idea of I need to create a conjoined disc to fill the defect. And he was in that two-disc paradigm. I'm going to do that by affixing those two discs together. I would like to go on if I could briefly to the 281 patent and the claim construction issue that the judge actually ruled against AGA on, but we believe the judge should have also construed the phrase in communication with the same as he did in the other claims. The claims of the 291 patent. Now, the judge clearly struggled with in communication with, in claim 1 of 281. And, you know, it's a difficult term to understand in the context of that claim because the ordinary meaning makes no sense. We see the words in communication within patent cases and particularly in mechanical cases where you see in communication it's talking about a connection where there are spaces open to one another between two things. That's the common ordinary meaning. But that meaning makes no sense in the context of this patent. The patent doesn't disclose that. So if you did what the judge originally did in its construction and give that in communication with that meaning, you end up really having to invalidate this patent for covering something it doesn't disclose. But then the district court, in our view, went down the wrong path when instead of sticking to the intrinsic evidence, it started looking broadly for different examples of in communication. The electronics art, for example, and saying, well, I'm going to try to find something that I can reconcile all those things together that will make sense here. And he ended up adopting something that nobody proposed and frankly, you know, is never used in communication with, is never used to describe. And that's this idea of transmitting movement between the two disks. The patent doesn't say that. The patent never says, you know, that part of this invention is transmitting movement from one disk to the other. Before you run out of time, I think it would be important to address the anticipation issue with respect to the 281 and the disclaimer question on which they rely. The first point I want to make on disclaimer is that there's no law that in the means plus function context that you can disclaim an equivalent. In other words, this is not, you know, the statute doesn't say and such a claim shall be construed to cover the structures disclosed in the specification plus the equivalents thereof except for the ones that we declare are not equivalents. And you have to keep in mind that in this case there was no dispute that for the purpose of the specific claim function at issue here that a radial frame is in fact equivalent to a circumferential frame the inventor testified that for the purpose of that specific function there was no difference. Something which King's radial arms simply do not do. How can you make that more clear? They were talking about well, first of all let me clarify what part of... I'm reading right out of the university's disclaimer here. The disclaim one now calls for a frame which extends along the periphery of the disc. Something which King's radial arms simply do not do. And then of course it goes on to explain that even more throughout the next paragraph. Well, that is a completely correct statement. It goes back to your comments, Judge Dyke. In the 217, it didn't just say peripheral frame. They amended the claims to say the frame extends circumferentially around the membrane. There's no dispute that that is in fact different than what's shown in King. So that statement that you read is clearly correct. We are now claiming something that is different from what's shown in King. But three applications later...  clearly disclaimed. No, the radial frame is merely being said we're claiming something different in this application. We're not claiming a radial frame, and so it's different. But it happens all the time that subsequent prosecution, you change your claims. The university made a clear indication that they were trying to broaden, and in fact in the intermediate 291 application, they removed the frame altogether. And they got an objection from the examiner. The examiner said, wait a minute, it seems like you're omitting a critical device. And they point to the sentence in their specification that says, well, we don't even need a frame. And the examiner says, okay. So we know they're broadening. So when they finally get to the 281, and they change to means plus function language, they remove all structure related to this element from the claim. Now we're no longer talking about have they literally claimed a circumferential frame. They've claimed literally a circumferential frame and equivalents thereof. That's one difference. But the other difference is that they've only claimed that structure and equivalents for a specific purpose. In the earlier prosecution, they weren't saying that King's radial frame is different in relation to how it causes the device to open. The patent criticizes the radial frames for other reasons. But for 112.6, in considering equivalents, we are limited to... Setting aside and criticizing radial arms. Why isn't that an additional reason for disclaimer? Exactly. Militating against your argument. First, they disclaim it in the earlier prosecution history, and then they nail it again in their patent. This court has certainly not said that every time you criticize a piece of prior art that it's thereby disclaimed. We need to look at what the criticism was... But we say that all the time in claim construction. You're clearly saying you're not this because you criticize it as very disadvantageous. And now it's working in their benefit. You want to change things around. There are cases on both sides of that, your honor. Sometimes... Grant, we have kind of a double disclaimer here. But we still need to look at the reason for the criticism of the radial frames. And what the patent says, for example, in column 10, is that the radial frames are bad for once the device is installed in the heart, because those radial arms flex a lot with the heart and they might tend to break over time. Okay. Let's assume it's true. That's still a criticism of a radial frame that has nothing to do with the function claimed. They claimed a self-expanding structure for moving the device from a compressed orientation to an expanded orientation. So they weren't talking about the disadvantages that happen in the heart. They're merely claiming a structure for expanding. And again, the inventor admitted that for that particular function there was no difference between a radial frame and a circumferential frame. So that is the heart of why there is no disclaimer here, is because we are dealing with different claim language and claim language that focuses specifically on the function being performed. I believe that's all I have, Your Honors. Thank you very much, Mr. Vandenberg. Thank you. You have a couple of minutes. Thank you. Thank you, Your Honors. I'm somewhat at a disadvantage because I don't have a copy of the Denspley case that was mentioned by AGA, but it's my recollection that that case was in fact involving a claim that was a Jepson-style claim where it was actually claiming a process of manufacturing. That's what Denspley was about. So I just wanted to point that out. I agree with Judge Rader that if the University went out and there was someone else making a radial style umbrella occluder and we accused it of infringement, we wouldn't get very far in any district court trying to claim that that's an equivalent now for infringement purposes. If it can't be an equivalent for infringement purposes, it cannot be an equivalent for anticipation purposes. It seems to me what you're saying is because under different claim language they disclaimed this prior art, that somehow that carries over because it's a means plus function claim and that while the function is broadly stated that somehow you have to limit the equivalence to not including the prior art in it, just because earlier under different claim language they had said that's not included. I have difficulty in following why that should be true. I appreciate that Judge Dyke, but it is the same claim language in this case. How is it the same claim language? It's the same claim language because what was at issue in the earlier application was a frame carried around the periphery, what we're calling the peripheral frame. That's what we were distinguishing in the prosecution history from the radial hub and spoke. Where's that language here? As construed by the court, the language is in the specification No, no, in the claim. In the claim it's the self-expanding structure which is under one total. That doesn't seem to be the same. But it's been construed to be the same because it relies upon the exact same structure. I don't understand that. The court said there could be two supporting structures, two structures that would support the function that's being claimed. The peripheral frame and a super-elastic membrane. So the peripheral frame is the supporting structure for the one total. There's a question then as to whether the prior art is equivalent to that, but just because the prior art was said not to be covered under some earlier claim language, why does that necessarily mean it can't be an equivalent under different claim language? Because this court has often said that you cannot have anticipation where the feature in the prior art was disclaimed during prosecution. But that's assuming that there's a broad disclaimer. Our cases suggest that you only have a disclaimer under particular claim language. If you use different claim language in the later patent, the earlier disclaimer doesn't apply. It would be quite a bad rule for patentees to say that when you disclaim it under one set of claim language, that it carries over to different claim language. In other words, that you can't file a new application that covers things that you decided to give up under different language in the earlier claim. I agree with the court, but what I'm saying is that in this case, it's not broader claim language and it's not different claim language. It's the exact same structure. It's the radial public spoke umbrella. As it's been construed by the district court, it is the same claim language. Absolutely. It absolutely is. And I would also point to the Ballard case, which is in our blue brief at page 37, where the disclaimer applied to the exact same structures in an earlier means plus function claim and a later means plus function claim. I am happy to address any other questions the court has, or I concede my time. Thank you, Mr. Canino.